IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHMIR AL-MIN MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV256 |
| | ) | |
| UNITED STATES OF AMERICA and | ) | |
| THE UNITED STATES MARSHALS | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

### Factual Background

Plaintiff has filed a motion for return of property under Fed. R. Crim. P. 41(g). (Docket No. 2.) In that motion, he alleges that, on March 14, 2003, officers from the Winston-Salem Police Department searched his residence and seized, among other items, drugs, guns, jewelry, and $10,146.99 in cash. He states that the guns and cash were eventually turned over to the United States Marshals Service, but that no forfeiture of the money was ever initiated. Plaintiff seeks the return of the money.

Defendants have filed a motion to dismiss Plaintiff's motion or, in the alternative, for summary judgment. (Docket No. 9.) In support of that motion, Defendants have set out the following facts. The government agrees that local officers searched Plaintiff's residence and seized $10,146.99 in cash, along with other property and contraband. This led to Plaintiff

being charged in the state courts with drug and stolen property crimes. He was arrested on March 16, 2003 and held in the Forsyth County Detention Center until March 27, 2003. On September 5, 2003, he was returned to that facility. On September 30, 2003, he was indicted in this Court in case 1:03CR386-1 and charged with possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] Plaintiff was transferred to federal custody and arraigned on October 9, 2003. He was eventually convicted and sentenced to 120 months of imprisonment.

Well prior to Plaintiff being indicted in this Court, the Drug Enforcement Agency (DEA) adopted the seizure of Plaintiff's money and accepted the case for administrative forfeiture. This occurred on April 10, 2003. The DEA then began the process of attempting to provide Plaintiff with notice of the pending forfeiture. On May 20, 2003, it sent written notice, return receipt requested, to Plaintiff's former residence at 130 Westdale Avenue in Winston-Salem, North Carolina.[2] The notice was returned stamped "RETURN TO SENDER. NOT DELIVERABLE AS ADDRESSED - UNABLE TO FORWARD." (Docket No. 10, Exs. D1, D2.)

---

[1] Plaintiff was indicted under the name Roddy Wilson, Jr. Early documents in his criminal case use that name, while later ones use Shmir Al-Min Muhammad. However, all documents list some spelling of Shmir Al-Min Muhammad as an a/k/a. The later documents list Roddy Wilson Jr. as being an a/k/a. Therefore, both names were always listed.

[2] This mailing and other DEA documents list both of Plaintiff's names. (Docket No. 10, Ex. D1, *et seq.*)

On June 2, 9, and 16, 2003, notice of the forfeiture was published in the Wall Street Journal. (*Id*,. Ex. D3.) That notice stated that the deadline for filing a claim to contest the forfeiture was July 16, 2003 based on receipt of the published notice. No claim was filed following the published notice.

On July 28, 2003, DEA Headquarters asked its Atlanta Field Office to confirm Plaintiff's address as shown on the prior mailing. It did so, and also located two additional addresses for Plaintiff. On August 5, 2003, the DEA sent mailings to these two addresses. They too were returned as undeliverable. (*Id*., Exs. D4-D7.)

Finally, on October 1, 2003, DEA headquarters asked that the Atlanta Office make a final search. It did so and located a further address for Plaintiff in Clarksdale, Mississippi. A letter was mailed to that address on October 9, 2003, the same day that Plaintiff was officially taken into federal custody and arraigned. Naturally, that letter was also returned as undeliverable. (*Id*., Exs. D8, D9.) On December 4, 2003, with no claim having been made based on any of the publications or mailings, the DEA forfeited the currency to the United States. (*Id*., Ex. D10.)

## Discussion

Motions under Fed. R. Crim. P. 41(g) are appropriate only where the property in question has not yet been forfeited to the government. Plaintiff filed under that rule because he was apparently unaware of the forfeiture. However, it turns out that the property was forfeited long ago. Therefore, Plaintiff's only recourse is under the Civil Asset Forfeiture

-3-

Reform Act of 2000 (CAFRA). That act codified existing practice in the federal courts where administrative forfeitures are involved. It now provides the exclusive remedy for challenging a declaration of forfeiture. *Mesa Valderrama v. Unites States*, 417 F.3d 1189, 1196 (11th Cir. 2005). It states that a person seeking to challenge a forfeiture can do so if they are a party who was entitled to written notice prior to the forfeiture, but did not receive that notice. 18 U.S.C. § 983(e). To prevail, a plaintiff must demonstrate that: (1) the government knew, or reasonably should have known of his interest, but failed to take reasonable steps to provide notice; and (2) he did not know or have reason to know of the seizure in time to file a claim prior to forfeiture. This Court's review is limited to the issue of reasonable notice. It cannot review the merits of the forfeiture determination. *Mesa Valderrama*, 417 F.3d at 1196.

Here, there is no question that Plaintiff was a party with an interest in the seized cash or that the government knew this. The government also does not contend that Plaintiff knew or had reason to know of the pending forfeiture in time to file a claim. Therefore, the only issue in contention is whether the government took reasonable steps to provide Plaintiff with proper notice.

Regarding administrative forfeitures generally, the United States Court of Appeals for the Fourth Circuit has noted that challenges to the forfeitures have their roots in the Fourth and Fifth Amendments of the United States Constitution. Notice is related to the Due Process Clause of the Fifth Amendment. The Court of Appeals has stated that "failure to

-4-

provide adequate notice of an administrative forfeiture raises the prospect of the government taking ownership of private property while the former owner of that property remains wholly ignorant of the transaction. The adequacy of notice of an impending forfeiture is thus a matter of obvious constitutional magnitude." *United States v. Minor*, 228 F.3d 352, 356 (4th Cir. 2000)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Regarding due process, the United States Supreme Court has held that it is satisfied if notice sent by the government is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)(quoting *Mullane*, 339 U.S. at 314). The notice does not have to actually be received as long as it is "reasonably calculated" to provide proper notice. Also, "heroic efforts" by the government are not required, only "reasonable" ones. *Id*. at 170. "'The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Id*. at 168, *quoting Mullane*, 339 U.S. at 315.

There is relevant case law, as the government points out, concluding that multiple address searches, combined with mailings to the found addresses and publication in a newspaper of general publication is normally notice that is "reasonably calculated" to reach an interested party and that satisfies the requirements of the due process clause. *United States v. Robinson*, 434 F.3d 357, 367 (5th Cir. 2005). However, there is also ample case law which holds that such efforts are not sufficient where an interested party is in government

custody at the time of the searches, mailings, and publications and the government does not attempt to contact the interested party at the place of their incarceration. *United States v. Minor*, 228 F.3d at 357-359 (publishing and sending notice to party's home and jail where he was no longer incarcerated insufficient notice where he was in federal custody elsewhere); *Armendariz-Mata v. U.S. Dep't of Justice, Drug Enforcement Admin.*, 82 F.3d 679 (5th Cir. 1996)(publication and mailing to home not adequate where interested party was imprisoned). This case falls somewhere in between the cases cited by the government and the cases dealing with persons in custody. Therefore, this Court must look closely at all of the relevant circumstances to determine whether the government made a reasonable attempt at giving notice to Plaintiff.

Here, Plaintiff was not in federal custody at the time that the government adopted the seizure of the cash, performed the first two address searches and associated mailings, or published the notices in the Wall Street Journal. Nor is there anything in the record to suggest that the government knew, or should have known, of his whereabouts during that time. In fact, a financial affidavit prepared in his criminal case on October 3, 2003, indicates that, prior to being rearrested by state authorities in early September of 2003, he had been "staying in hotels in W[inston-]Salem." (1:03CR386-1, Docket No. 5.) There is no real argument that the government's actions up until this point were reasonable.

Nevertheless, by October 3, 2003, the date on which the financial affidavit was obtained, government personnel were aware of his actual location in state custody. That

knowledge can be ascertained from the fact that federal law enforcement officers had earlier placed a detainer on Plaintiff.[3]  Finally, on October 6, 2003, the undersigned issued a Writ to Forsyth County Jail ordering that Plaintiff be brought to this Court for arraignment.  (*Id.*, Docket No. 4.)  At that time, federal law enforcement and the United States Attorney's Office in this District knew that Plaintiff was housed in the Forsyth County Jail.  Yet, the DEA's Atlanta Office apparently failed to discover this and, a few days later, DEA Headquarters made its final mailing to Clarksdale, Mississippi, instead of the Forsyth County Jail.[4]  Defendants have not shown what steps the Atlanta Office took in making its search or explained why it did not contact law enforcement connected to the case.

More important than the issue of federal involvement is the fact that Plaintiff was in state custody as of September 5, 2003, or more than a month prior to the mailing of the final notice.  Defendants put forth no evidence that the Atlanta Office attempted to contact local law enforcement to see if they knew of Plaintiff's whereabouts.  As the United States Court

---

[3] The exact date of the detainer is not clear.  Local jail records supplied by Defendants indicate that he was subject to a federal detainer on September 5, 2003.  (Docket No. 10, Ex. C.)  However, this is not possible given that Plaintiff was not indicted in this Court until September 30, 2003, and that no arrest warrant was issued for Plaintiff until October 1, 2003.  Based on this Court's records, the detainer would have been issued on either October 1 (following the issuance of the warrant), October 2, or October 3, 2003 (prior to the taking of the financial affidavit).  The Court finds that Plaintiff was in the Forsyth County Jail on September 5, 2003, but was not subject to the detainer until sometime shortly after he was indicted on September 30, 2003.

[4] There is no indication to show that the government's failure to send notice to Plaintiff in Forsyth County Jail was intentional, as opposed to inadvertent.

of Appeals for the Tenth Circuit has observed, "[w]here property is initially seized by state authorities, and then turned over to the federal government for federal forfeiture of that property, it is reasonable to expect the federal government to obtain from the seizing authority whatever evidence it may have concerning the whereabouts of the [interested party]." *United States v. Rodgers*, 108 F.3d 1247, 1251 (10th Cir. 1997). It is possible that the DEA Headquarters obtained the Westdale Avenue address that was the target of the first mailing from local records. However, if it did, there is no sign that it again queried local authorities at the time it did its second and third searches for Plaintiff's address. This is so even though Plaintiff was charged in the state courts with charges related to the seized money and was released on a state bond. If anyone knew of his whereabouts, it should have been the local authorities and, at least as of September 5, 2003, they did. He was again in their custody. However, the DEA apparently did not contact them in its final search. The final search is the focus of the Court's inquiry regarding reasonableness. It matters little if the earlier searches were more thorough; the last search in time, since the government undertook it, must be sufficient to pass the "reasonably calculated" test.

Overall, Defendants have provided evidence that the DEA published notice of the forfeiture of Plaintiff's money, performed address searches through the DEA's Atlanta Office, and sent mailings to the addresses located in those searches. However, they have not explained what the searches in Atlanta involved and, more importantly, have not shown any attempt to contact local and federal law enforcement officers connected to Plaintiff's

-8-

criminal cases. These were cases directly related to the search that resulted in the seizure of the money. It was those officers or their organizations who would have been most likely to know Plaintiff's whereabouts. Further, as of the date of the DEA's last, futile mailing to Mississippi, Plaintiff was in custody in the Forsyth County Jail. A check with either local officers or federal law enforcement or the United States Attorney's Office in this District would easily have confirmed that fact. Defendants provide no evidence that such checks were made. Here, as in *Rodgers*, it is reasonable to expect the government to have consulted with local law enforcement at the time of the search preceding the forfeiture of the currency in issue. Defendants have failed to show that they are entitled to dismissal or summary judgment in this matter.

Not only is dismissal or summary judgment in Defendants' favor not appropriate, but the record is also sufficient to establish a claim by Plaintiff that the critical attempt at notice prior to the forfeiture of his money was not reasonably calculated to provide proper notice. Therefore, the requirements of due process were not met and Plaintiff has met his burden under 18 U.S.C. § 983(e). Defendants' motion to dismiss or for summary judgment should be denied and the administrative forfeiture of Plaintiff's money should be vacated without prejudice to its re-institution upon proper notice.

-9-

**IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss or for summary judgment (Docket No. 9) be denied and that the administrative forfeiture challenged by Plaintiff be vacated without prejudice to its re-institution upon proper notice.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: February 11, 2010